FILED

2022 Sep-30  PM 05:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **STEPHON GREEN,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:20-cv-00425-ACA** |
| | ] | |
| **CITY OF BIRMINGHAM,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Stephon Green served as a police officer for the City of Birmingham ("the City") from April 2016 until August 2019. During that time, the City suspended Mr. Green for three days without pay for his failure to correctly administer a field sobriety test to an off-duty police officer after the officer caused an automobile accident and for failing to arrest the offending officer based on the probable cause the City maintains the incorrectly administered tests provided. Mr. Green filed this lawsuit against the City, claiming that the City violated his Fourteenth Amendment procedural due process rights.

Before the court is the City's motion for summary judgment. Because the City did not provide Mr. Green with constitutionally adequate due process, the court **WILL DENY** summary judgment.

## I.      BACKGROUND

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch. Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).  In accordance with that standard, the facts are as follows.

In December 2018, Birmingham Police Department dispatched Mr. Green to the scene of an accident caused by an individual who fled the scene.  (Doc. 24-1 at 38–39; doc. 24-2 at 29). Once there, Mr. Green radioed back a request for assistance in locating that driver. (Doc. 24-1 at 23, 39).

Officer Barry Cole located the driver at the nearby hospital and sent Mr. Green a picture of the driver's license.  (Doc. 24-1 at 39).  Mr. Green immediately recognized the driver as Birmingham Police Sergeant Ward and contacted his supervisor, Sergeant Vanessa Jackson.  Sergeant Jackson asked whether Sergeant Ward was intoxicated. (*Id.*). Mr. Green had not yet personally observed Sergeant Ward so he posed the same question to Officer Cole. (*Id.*).  Officer Cole responded that Sergeant Ward did not appear intoxicated and Mr. Green conveyed that assessment to Sergeant Jackson. (*Id.*).

Shortly thereafter, Officer Cole, Sergeant Ward, and Mr. Green met up. These three officers were next joined by Officer Smith, Lieutenant Majors, and Sergeant Jackson.  (Doc. 21-1 at 39).  Later, these officers were joined by their captain, James

Jackson, and Investigative Affairs Sergeant Rebecca Herrera. Each of these individuals assessed Mr. Ward and most reached the consensus that Sergeant Ward's accident was caused by medically related events. (*See id.*; *see also* doc. 24-2 at 30; doc. 27-1 at 25).    Sergeant Herrera believed the accident was caused by alcohol. (Doc. 24-1 at 39–40)   Sergeant Herrera advised Mr. Green to conduct a standard field sobriety test ("SFST") on Mr. Ward.  (Doc. 24-1 at 39–40)

Though Mr. Green disagreed with Sergeant Herrera's assessment, he administered the SFST.  (*Id.*).  Sergeant Ward performed poorly on the SFST, which Mr. Green believed was because of his medical condition, not intoxication.  (*Id.*). None of his supervisors ordered Mr. Green to conduct further testing or arrest Sergeant Ward.  (*See id.* at 34; doc. 24-2 at 31).  Consequently, Mr. Green did not arrest Sergeant Ward.  (*Id.* at 23, 40).

After the incident, Chief of Police Patrick Smith filed a formal complaint against all the officers involved in the accident investigation. (CITE)  Chief Smith's complaint against Mr. Green alleging, among other things, that Mr. Green "relied on personal opinion, rather than the result of the [SFSTs] to determine whether or not to make an arrest Sergeant Ward[,] and failed to properly administer the SFSTs" rendering the SFSTs inadmissible." (Doc. 27-2).

The same day Chief Smith filed his complaint, Sergeant Herrera issued an Internal Affairs Report, which contained a summary of the facts based on statements

made by all the officers on the scene. (Doc. 27-1 at 2–21).  The report also included summaries of statements regarding Sergeant Ward's direct supervisor's personal concerns about Sergeant Ward's health (*id.* at 21–22), and Birmingham Police Department's self-appointed expert's opinion that, because the SFST's were improperly administered, probable cause "could be effected" and the test results would be "most likely" inadmissible (*id.* at 22–24).  The report recommended that the allegations that Sergeant Ward and Mr. Green violated various City policies be sustained and that they be disciplined for those violations.  Finally, the report recommended that the allegations against Sergeant Jackson, Lieutenant Majors, and Captain Jackson (for failure to ensure that their subordinate, Mr. Green, effected an arrest) be sustained and that they be disciplined for this this violation. (*Id.* at 25–29).

The City initiated disciplinary proceedings against Mr. Green, Sergeant Ward, Sergeant Jackson, Lieutenant Majors, and Captain Jackson.  (Doc. 24-1 at 21–23; *see also* doc. 27-1 at 24–25).  Pursuant to the City's Human Resources Policy, before the City suspends an employee, the "Department Director shall afford the employee due process in the form of a pre-determination hearing to consider whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  (Doc. 24-2 at 34).  At the pre-determination hearing, the employee is "given an opportunity to respond to the charged violations both verbally or by submitting written statements from themselves or others for the

4

Department Director's consideration" but may not cross-examine any witness. (*Id.* at 35). And, although the employee may be accompanied by a lawyer or other representative, the representative may not participate in the hearing. (*Id.*).

In accordance with the City policy, Chief Smith provided Mr. Green a Notice of Determination Hearing ("the Notice") outlining Mr. Green's ability to respond to the charged violations. (Doc. 24-1 at 21). The notice also identified the rules Mr. Green allegedly violated and a short five-sentence description of the underlying conduct. The City alleged that Mr. Green was the primary officer assigned to Sergeant Ward's accident, that a decision was made that Mr. Green should administer the SFST's, that Mr. Green "failed to correctly administer" all three SFSTs to Sergeant Ward, that Mr. Green's body camera "'appeared to show" that Sergeant Ward failed the SFSTs and that Mr. Greene failed to arrest Sergeant Ward despite the probable cause presented by the SFSTs. (*Id.* at 23). The City did not explain or describe any of the witness statements supporting these allegations. (Doc. 10 at ¶ 22; *see also* Doc. 24-1 at 21 – 23).

Mr. Green and his attorney attended the pre-determination hearing. (*Id.* at 7). Chief Smith presided over the hearing (*id.* at 7 p. 19: 5–8), reiterated the allegations against Mr. Green, and asked if Mr. Green had anything to add. (*Id.* at p. 18: 16 – 23). In advance of the hearing, Mr. Green created a time line of events to help him

with his response.[1]  (*Id.* at p. 20:17 – 21:6).  He provided a copy of the timeline to Chief Smith and was in the process of giving his verbal response when Chief Smith cut him off.  (Doc. 21-1 at 7 p. 20:17–21:6).

After the hearing, Chief Smith provided Mr. Green the "Decision upon Determination Hearing," which set out that the charges against Mr. Green were sustained and informing Mr. Green that he was suspended without pay for three days. (Doc. 24-1 at 24).  In addition, Chief Smith required Mr. Green to retrain on the SFST techniques the day he returned from his suspension.  (*Id.*).

The City's Human Resources Policy provides that, if an employee feels he has been wrongfully disciplined, he may request an appeal.  (Doc. 24-2 at 34–36). An employee who wishes to appeal suspensions of five days or less is not entitled to an appellate hearing but may request a review of the suspension by Human Resources.  (*Id.*).  To do so, the employee submits a written statement "that details the nature of the discipline, relevant events, and the reason the employee feels the disciplinary decision should not be upheld."  (*Id*. at 36).  The Director of Human Resources then reviews the disciplinary decision and the employee's statements to determine whether to uphold the discipline.  (*Id*.).

Mr. Green timely requested a review of Chief Smith's decision to suspend him without pay for three days.  (Doc. 24-1 at 32–35; Doc. 24-2 at 28).  Mr. Green

---

[1]        The timeline is not part of the record in this case.

argued in his appeal that while investigating Sergeant Ward's accident, he "was under the direct supervision of four superior officers" who shared his opinion that Sergeant Ward was suffering a medical-related issue and was not intoxicated. (Doc. 24-1 at 34). Mr. Green cited to Birmingham Police Department Rules stating that, among other things, "[w]hen 2 or more members on duty are working together, the member of the highest rank is in command and will be held responsible." (*Id*. at 32). Mr. Green included in his submission a request for discovery. (*Id*. at 34).

Director of Human Resources Jill Madajczyk upheld Mr. Green's suspension. (Doc. 24-2 at 27–33). In making her decision, Ms. Madajczyk reviewed Mr. Green's statement of appeal, relevant Birmingham Police Department Rules and Regulations, the Notice, and Decision up Determination Hearing. (*Id*. at 29). She also reviewed the evidence the City relied on in making its determination that Mr. Green committed five violations of City policy: the crash report from December 15, 2018, the call for service detail report from December 15, 2018 and the Internal Affairs Case. (*Id.*). Of note, Mr. Green was neither provided, nor received an explanation of, this evidence at any point in the proceedings against him.

In response to the decision, Mr. Green filed a "notice of claim" against the City of Birmingham, Ms. Madajczyk, Chief Smith, and Mayor of Birmingham Randall Woodfin. (Doc. 24-1 at 26–30). He then sued the City. (Doc. 1-1). Mr. Green's complaint asserts one count pursuant to 42 U.S.C. § 1983 alleging that the

City deprived him of procedural due process in violation of the Fourteenth Amendment by suspending him for three days without pay.  (Doc. 10).

## II.   DISCUSSION

Mr. Green contends he was denied due process because the City's procedures did not afford him with the "opportunity to conduct discovery, review witness statements, call favorable witnesses, submit evidence, or cross-examine witnesses." (Doc. 10 at ¶ 21).  Mr. Green also contends that he was "denied the right to an impartial tribunal."  (*Id*. at ¶ 22).  The City moves for summary judgment on Mr. Green's claim, arguing that its pre-deprivation hearing and post-deprivation appeals process are constitutionally adequate and that Mr. Green's appeal was unbiased. (Docs. 23, 25).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The court views the evidence in the light most favorable to the nonmoving party. *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018). "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

A. Mr. Green's Suspension

Mr. Green alleges that he "was suspended without pay for three days and not afforded a meaningful opportunity to be heard regarding the incident on December 15, 2018 in violation of the Fourteenth Amendment." (Doc. 10 at ¶ 21). In it's motion for summary judgment, the City conceded that his suspension without pay for three days constitutes a property deprivation.[2] For its argument in support of summary judgment, the City argues that  Mr. Green was not entitled to a full-blown evidentiary hearing to appeal his suspension because the due process it provided Mr. Green at his pre-suspension hearing satisfied the due process requirements for a pre-termination hearing. (Doc. 25 at 12 – 14). Thus, Mr. Green received more due process than the City was required to give him.  (*Id.*).

But because the undisputed facts do not support the City's claim, its motion fails. "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  In the present case, there are two issues that undermine the City's contention that Mr. Green had opportunity to be heard.  First, the parties dispute whether Mr. Green had the

---

[2] The City argues for the first time in its reply brief that Mr. Green's suspension "does not constitute deprivation of a property interest." (Doc. 28 at 3). Because the City did not make this argument in its initial brief, the court will not consider it. *See Herring v. Sec'y, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.").

opportunity to be heard. Second, it is undisputed that Mr. Green did not Mr. Green did not receive a copy of the investigation report or the witness statements at any point during the course of his administrative procedure.

The City makes maintains that it gave Mr. Green the opportunity to be heard at his pre-suspension hearing. But Mr. Green testified that he was cut-off when he attempted to make a statement at the pre-suspension hearing and left to rely on a piece of paper, which he characterizes as a summary of the points he wanted to make. This material, disputed fact precludes summary judgment. Fed. R. Civ. P. 56.

In his complaint, Mr. Green alleged that the City did not allow him to review the Report or review any other investigative materials in advance of either the pre-suspension hearing or the post-deprivation appeal.  (Doc. 10 at 3 ¶¶ 10–11; *see also* Doc. 27 at p. 7–8). The City does not dispute these allegations (*see generally* doc. 25 at 14), and apparently for good reason: there is no provision for the production or explanation of evidence in the City's Disciplinary Hearings and Appeal Policy. (Doc. 24-2 at 34–36).  But in cases where the employee has a recognized property interest, an employee cannot be said to have the opportunity to provide his side of the story without an explanation of the employer's evidence.  See *Loudermill*, 520 U.S. at 546.

In view of the City's failure to provide an explanation of its evidence and the parties dispute over whether Mr. Green was provided an opportunity to respond, the

Court cannot find that Mr. Green's administrative proceedings were constitutionally adequate as a matter of law.  Accordingly, the court **WILL DENY** the City's motion for summary judgment as to that claim.

B. Mr. Green's appeal was unbiased

Mr. Green also alleges that he was "denied the right to an impartial tribunal, as the Human Resources Department is still part of the City of Birmingham and the Human Resources Director, a full-time employee of the City of Birmingham, is not an unbiased neutral party."  (Doc. 10 at ¶ 16).  The City argues that it is entitled to summary judgment on this claim because Mr. Green's appeal was unbiased.  (Doc. 25 at 18–20).

"It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property."  *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994).  In his response to the City's motion for summary judgment, Mr. Green argues that his appeal was biased in two ways.  (Doc. 27 at 13–17).  First, he argues that the City's appeal process for suspensions of five days or less is unconstitutional because it consists of an appeal directly to the City's own Director of Human Resources.  (*Id*. at 15).  Second, he argues that the evidence demonstrates actual bias by Internal Affairs investigator, Sergeant Herrera.  (*Id*. at 15–16).

As for Mr. Green's first argument, a decisionmaker is not "necessarily partial" merely because she is employed by the entity taking the adverse action.  *See Holley v. Seminole Cnty. Scho. Dist.*, 755 F.2d 1492, 1497 (11th Cir. 1985) (finding no due process violation when a school board employed its own attorney as the decisionmaker in upholding non-renewal of a teacher's contract).  Rather, the court in *Holley* emphasized that a plaintiff must demonstrate "actual bias" by the decisionmaker.  *Id*. Mr. Green does not offer evidence of actual bias.

Mr. Green's complaint alleges actual bias by Ms. Herrera only. But these allegations fall short.  Mr. Green 's alleges Sergeant Herrera's involvement in investigating the underlying incident biased her against her fellow officers.  (Doc. 27 at 15–16; *see also* doc. 27-1).  But Mr. Green offers no explanation of how Sergeant Herrera's presence at the accident scene and subsequent investigation constitutes "actual bias" against him.   And Sergeant Herrera was not a decisionmaker in Mr. Green's case; she merely compiled statements from the officers present on December 15, 2018 and then made an initial recommendation that the allegations of misconduct against each of those officers, including Mr. Green, be sustained.  (Doc. 27-1).  Moreover, there is no evidence that Sergeant Herrera played any role in Ms. Madajczyk's decision to uphold Mr. Green's suspension.  (*See* doc. 24-2 at 27–33).  Accordingly, Mr. Green fails to demonstrate that Sergeant Herrera acted as an impartial decisionmaker.

Because there is no evidence of actual bias on the part of Ms. Madajczyk or Sergeant Herrera, Mr. Green's claim fails.  Accordingly, the court **WILL GRANT** the City's motion for summary judgment on this claim.

### III.   CONCLUSION

The court concludes that there are disputed material facts that preclude entry of summary judgment on the issue of whether the City's suspension hearing procedures deprived Mr. Green of his due process rights. Accordingly, the court **WILL DENY** the City's motion for summary judgment on that issue. Regarding Mr. Green's claim that the City's suspension was tainted by the bias, the court concludes that Mr. Green did not produce undisputed evidence of actual bias of either Ms. Madajczyk or Sergeant Herrera, Accordingly, the Court **WILL GRANT** the City's motion for summary judgment on this claim.

**DONE** and **ORDERED** this September 30, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

13